UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEBORAH PERKINSON,

        Plaintiff,

       v.

ILLINOIS STATE POLICE, MASTER
SARGENT JOSEPH BELIVEAU, JOHN
SCHUSTER and UNKNOWN ILLINOIS
POLICE OFFICERS,

        Defendants.

Case No. 15-cv-526-JPG-PMF

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on the defendants' motion to dismiss plaintiff Deborah

Perkinson's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc.

38).   Perkinson has responded to the motion (Doc. 45).

**I.**      **Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations

in the complaint.   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)).   To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a

complaint must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."   Fed. R. Civ. P. 8(a)(2).   This requirement is satisfied if the complaint (1)

describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the

grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a

speculative level.   *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

*EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).   "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Bell Atlantic*, 550 U.S. at 561–63; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief;   it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think:   What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667.

This standard, however, will not prevent dismissal of a complaint that pleads too much. A

2

case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to

prevail.   *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. v. St. Louis S.W.*

*Ry.*, 125 F.3d 481, 483 (7th Cir. 1997); *see Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir.

2009) (dismissal appropriate when party pleads facts establishing defense to his claim).

## II.    Facts

As a preliminary matter, both parties have attached to their briefs matters outside the

pleadings.   When such material is presented in connection with a Rule 12(b)(6) motion to dismiss,

the Court may treat the motion to dismiss as a motion for summary judgment or it may exclude the

additional material from consideration.   *See* Fed. R. Civ. P. 12(d).   There is an exception to this

rule, however, when the additional material is something of which the Court may take judicial

notice.   *See Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

The Court may take judicial notice of public records, *see Pugh v. Tribune Co.*, 521 F.3d 686, 691

n. 2 (7th Cir. 2008) (publicly reported stock price), including judicial proceedings, *see Henson v.*

*CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).   In this case, the Court considers the motion

under Rule 12(b)(6), takes judicial notice of and considers the attached materials from state

judicial proceedings, but declines to consider any additional attached materials.   Furthermore, to

the extent the additional material contradicts allegations in the complaint, the Court has relied on

the additional material rather than the allegations.   *See Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir.

2011) (*per curiam*) (district court may rely on exhibits to complaint rather than contradictory

allegations in complaint); *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,

474 F.3d 463, 466 (7th Cir. 2007) (same).

The complaint and the matters of which the Court takes judicial notice establish the

following relevant facts for the purposes of deciding the pending motion.

In March 2013, law enforcement officers were investigating possible prostitution activity at a business called S&L Rub.   Officers executed a search warrant for the premises of S&L Rub and seized documents.   At about the same time, other government inspectors conducted inspections of the adjacent business, Bottoms Up Gentlemen's Club ("Bottoms Up"), and found used condoms and discarded condom wrappers in certain areas of the club.

In April 2013, defendant Joseph Beliveau, a master sergeant with the Illinois State Police ("ISP"), submitted a complaint for a warrant to search Perkinson's home and for a warrant to seize Perkinson's bank accounts.   In support of the requests for warrants, Beliveau stated that documents seized in the search of S&L Rub "revealed a close intertwined relationship" between Perkinson, S&L Rub and Bottoms Up, 1st Am. Compl. ¶ 19, and provided probable cause to believe that Perkinson had committed a variety of crimes relating to prostitution, 1st Am. Compl. ¶ 20, and that evidence of criminal activity would be found at Perkinson's home, 1st Am. Compl. ¶ 21.   Beliveau's statement did not contain supporting details about Perkinson's alleged relationship with the two businesses or any criminal activity.   A state court judge issued the requested warrants.   The search warrant was executed on Perkinson's home on April 29, 2013, and law enforcement seized Perkinson's business and tax records as well as a number of items of personal property.   On May 9, 2013, Perkinson learned that her bank accounts had also been frozen pursuant to the seizure warrant.   No forfeiture proceeding was ever commenced to transfer ownership of the seized property.

When her property had not been returned or unfrozen by December 9, 2013, Perkinson filed a claim for replevin against the ISP and Beliveau in the Circuit Court for the Twentieth

Judicial Circuit, St. Clair County, Illinois, No. 13-MR-407.   She claimed that the items seized were wrongfully confiscated and that she was entitled to possession of them, and she asked the court for an order directing that her seized property be restored to her and that her bank accounts be unfrozen.   The court ordered the ISP to show that a timely civil forfeiture action had been filed pursuant to 725 ILCS 150/6 *et seq.*, the provision of the Illinois Drug Asset Forfeiture Procedure Act allowing for non-judicial forfeiture   The ISP did not respond in a timely manner, so the Court found that "the State should have filed an action pursuant to Illinois Civil Forfeiture laws.   In failing to do so, Plaintiff's due process rights were violated and State shall return money from the bank accounts in question.   Case against Joseph Beliveau is dismissed."   Defs.' Ex. D, Order, May 5, 2014 (Doc. 40 at 9).   Two days after entry of the court's order, the ISP filed a belated response.   Perkinson then asked the court for a voluntary non-suit, and pursuant to that request, the court dismissed the action without prejudice on May 13, 2014.

In the meantime, on May 9, 2014, Perkinson was arrested for conspiracy to commit money laundering and conspiracy to keep a place of prostitution.   She was released on bond that same day.   The State of Illinois dismissed the charges with prejudice on January 21, 2015, but that was not the end of the story.   The following day, Perkinson learned that her bank accounts had again been frozen after defendant John Schuster, an officer with the ISP, had presented to the bank for a second time the May 9, 2013, seizure warrant.   The accounts remained frozen for seven days before the bank independently came to the conclusion that the warrant was not legally justifiable and released the accounts.

Perkinson attempted to file this lawsuit on May 8, 2015, but her complaint was not signed. The pleading was stricken, and she filed a signed pleading on May 11, 2015.   In her Amended

Complaint, she alleges that Beliveau's statements in the complaints requesting the warrants were false and misleading, that the ISP was aware of Beliveau's wrongful conduct and previous complaints about its officers' wrongful conduct, including that of Beliveau and Schuster, and that the ISP was complicit in or deliberately indifferent to such conduct.   Because of the defendants' wrongful conduct, Perkinson claims she has been forced to hire an attorney and has suffered physical, mental and emotional injury.   In her complaint, she alleges one count under 42 U.S.C. § 1983 for violation of her Fourth, Fifth and Fourteenth Amendment rights (Count 1), under state law for fraud and conversion (Count 2) and under state law for false imprisonment, unlawful restraint and false arrest (Count 3).

The defendants now ask the Court to dismiss Count 1 of Perkinson's complaint on a variety of grounds:   (1) statute of limitations for the April 29, 2013, search of Perkinson's home, (2) *res judicata* of the state court's May 2014 orders, (3) immunity from damage suits under the Eleventh Amendment and the inability to be sued under 42 U.S.C. § 1983 and (4) failure to plead enough facts to state a claim.   They ask the Court to dismiss Counts 2 and 3 for (1) failing to plead enough facts to state a claim and (2) state law immunities.   Perkinson contends that she filed this suit within the statute of limitations because her suit accrued some time after the search and seizures and she suffered a continuing wrong; that *res judicata* does not apply because the state court order was not final; that she has sufficiently pled her claims; that the Eleventh Amendment does not bar suits for prospective injunctive relief; and that qualified immunity does not apply.

## III.   Analysis

The Court begins with the question of the proper defendants in this suit, then turns to whether the claims against those defendants should be dismissed.

A.   Count 1

1.   11th Amendment Immunity; Ability to be Sued

The defendants argue that Count 1 against the ISP and Beliveau and Schuster, in their official capacities, is barred by the Eleventh Amendment.   Additionally, they argue that a state, its agencies and its employees sued in their official capacities are not "persons" subject to suit under § 1983.   Perkinson essentially concedes she cannot bring a claim for damages against the ISP or the individual defendants in their official capacities, but she contends she may still maintain claims for prospective injunctive relief to remedy an ongoing constitutional violation.

The Court first addresses the defendants' statutory argument that they are not amenable to suit under § 1983.   When a defendant makes a statutory argument that it is not subject to suit under a statute and a constitutional argument that the Court should not hear a claim because of the Eleventh Amendment, the Court should address the statutory argument first.   *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 779-80 (2000) (False Claims Act). Here, the law is clear that neither a state, its agencies or its officials sued in their official capacities for money damages are persons within the meaning of § 1983; therefore, they cannot be sued under that statute.   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Thomas v. State of Ill.*, 697 F.3d 612, 613 (7th Cir. 2012); *Arsberry v. Illinois*, 244 F.3d 558, 561 (7th Cir. 2001).   Thus, Count 1 against the ISP and against Beliveau and Schuster in their official capacities for damages must be dismissed without prejudice.

As for Count 1 against Beliveau and Schuster in their official capacities for injunctive relief, state officials can be sued under § 1983 in their official capacities for prospective injunctive relief to enjoin ongoing violations of federal law;   those actions are not considered to be against

7

the state.  *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985); *see Ex parte Young,* 209 U.S. 123,

159-60 (1908).   Perkinson argues that the defendants' pattern of improperly obtaining and

executing warrants against her is an ongoing practice that should be stopped by prospective

injunctive relief.   The Court finds the Amended Complaint does not allege a course of conduct by

the defendants that amounts to an ongoing violation of federal law.   The acts described are

discrete and the last act described occurred more than a year ago.   There is simply no ongoing

violation of federal law that has been alleged for which prospective injunctive relief could be

warranted.   Therefore, Count 1 against Beliveau and Schuster in their official capacities for

injunctive relief must be dismissed without prejudice for failure to state a claim.

  These rulings leave in Count 1 Perkinson's claims against Beliveau and Schuster in their

individual capacities for money damages, which are discussed below.

   2. <u>*Res Judicata*</u>

  The defendants argue that Perkinson's claims based on the 2013 warrants for searches and

seizures are barred by *res judicata* from the state court orders dismissing her claims against

Beliveau with prejudice on the merits and dismissing her claims against the ISP without prejudice.

The defendants argue Perkinson has already, or could have, raised in that forum the issues she now

brings in this case.   Perkinson argues the May 5, 2014, state court order directing the unfreezing

of her bank accounts and the dismissal of claims against Beliveau is not final such that it has *res*

*judicata* effect.   She believes it is not final because, at the point Perkinson dismissed her claims

against the ISP without prejudice, she was still within the time in which she could have appealed

the order dismissing Beliveau.   While the affirmative defense of *res judicata* should be raised in a

motion for judgment on the pleadings, the Court may consider it in a motion to dismiss as long as

it has all the pertinent materials before it and the non-moving party does not object.   *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010).   The Court has the necessary materials before it, and Perkinson has not objected, so the Court considers the merits of the argument.

The doctrine of *res judicata* prevents relitigation of matters that were fully litigated in an earlier suit that resulted in a judgment on the merits.   *Groesch v. City of Springfield*, 635 F.3d 1020, 1029 (7th Cir. 2011).   Because of the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect that the court rendering the judgment would give it.   *Bonnstetter v. City of Chi.*, 811 F.3d 969, 974 (7th Cir. 2016); *Licari v. City of Chi.*, 298 F.3d 664, 666 (7th Cir. 2002).   Thus, when examining whether an Illinois court judgment bars a federal lawsuit because of *res judicata*, the Court looks to the preclusive effect an Illinois court would give the judgment in question.   *Groesch*, 635 F.3d at 1029.

Under Illinois law, *res judicata* applies if the prior decision (1) was a final judgment on the merits rendered by a court of competent jurisdiction, (2) involved the same parties or their privies, and (3) constituted the same cause of action as the current suit.   *Hudson v. City of Chi.*, 889 N.E.2d 210, 215 (Ill. 2008); *Bonnstetter*, 811 F.3d at 975.   An order becomes final for *res judicata* purposes when there is no further opportunity for appellate review.   *Dookeran v. County of Cook*, 987 N.E.2d 826, 830 (Ill. App. Ct. 2013).   Under Illinois law, a final judgment on the merits involving the same parties or their privies precludes the relitigation not only of claims that were *actually* litigated but also claims that *could have been* litigated because they arose from the same group of operative facts.   *Hudson*, 889 N.E.2d at 213; *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992).   In this case, Perkinson only challenges whether the dismissal of her claims against Beliveau is a final order, and she does not contend that

9

any exceptions to *res judicata* apply.   Thus, she has waived any other objection to the application of *res judicata*.

The order dismissing Perkinson's claims against Beliveau based on the 2013 search and seizures is a final order on the merits.   Illinois Supreme Court Rule 273 states, "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits."   The claims against Beliveau were involuntarily dismissed, and that dismissal did not fall within any exceptions listed in Rule 273.   Therefore, the order was a final order on the merits.   *See Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204-05 (Ill. 1996) (holding order dismissing some, but not all, claims on statute of limitations grounds was final order on the merits).   While this order was not immediately appealable because the Court did not find under Illinois Supreme Court Rule 304(a) that there was no just reason for delaying an appeal until resolution of all the claims in the case, the order became appealable after Perkinson voluntarily dismissed the remaining claims in the case.   *See Dubina v. Mesirow Realty Dev., Inc.*, 687 N.E.2d 871, 874-75 (Ill. 1997) (order of voluntary dismissal disposing of all remaining claims in the case "rendered all orders which were final in nature, but which were not previously appealable, immediately final and appealable").   Perkinson did not appeal *any* of the orders in the replevin action and the period for appeal has passed, so those orders became final for *res judicata* purposes.

Even though Perkinson has waived any other arguments against *res judicata*, the Court finds the other requirements have been met with respect to the claims based on the 2013 search and seizures.   The replevin action involved the same parties as this case:   Perkinson, the ISP and

Beliveau.   Additionally, the causes of action are the same because they arose from the same group of operative facts even though they assert different theories for relief.   *See River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 891 (Ill. 1998).   Perkinson had a full and fair opportunity to argue in state court that she was entitled to have her property returned or unfrozen because the warrants authorizing those seizures/freezes were improperly obtained, although she failed to make that argument in that forum.

For these reasons, the Court finds *res judicata* precludes litigation of whether Beliveau violated her Fourth Amendment rights against unreasonable search and seizure, as alleged in Count 1, based on his conduct in obtaining the 2013 warrants for the search of Perkinson's home, the seizure of items from that home, and the freezing of her bank accounts.

3.    Statute of Limitations

The defendants also ask the Court to dismiss Perkinson's claims in Count 1 to the extent they rely on the April 29, 2013, search and seizure and the warrant authorizing those actions. They note that the search occurred more than two years before Perkinson filed this lawsuit. Perkinson argues that those claims[1] are not barred because the statute of limitations did not begin to run until she had knowledge that would have led a reasonable person to believe her rights might have been violated, that is, until law enforcement had retained her seized property for an unreasonable length of time.   She also argues that any violation was a "continuing violation" which extended into the limitations period.

The parties agree that the applicable statute of limitations is two years.   Claims under 42 U.S.C. § 1983 arising in Illinois are subject to the state two-year personal injury limitation period

---

[1] Perkinson actually addresses the April 29, 2013, search and seizure and the May 2013 bank account freeze, although the defendants only ask for dismissal of claims based on the April 29, 2013, activities.

set forth in 735 ILCS 5/13-202.   *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Draper v. Martin,*

664 F.3d 1110, 1113 (7th Cir. 2011).   Thus, on the face of things, it appears Perkinson filed this

suit too late – two years and nine days after the April 29, 2013, search.[2]

However, Perkinson argues that her cause of action did not accrue on April 29, 2013, and

therefore the limitations period did not begin to run, until later.   Accrual of a § 1983 cause of

action is determined by federal law without reference to state law.   *Wallace*, 549 U.S. at 388.

Under federal law, "it is the standard rule that accrual occurs when the plaintiff has a complete and

present cause of action . . ., that is, when the plaintiff can file suit and obtain relief."   *Id.* (internal

quotations, citations and brackets omitted).   The *Wallace* Court observed:

> "Under the traditional rule of accrual . . . the tort cause of action accrues, and the
> statute of limitations commences to run, when the wrongful act or omission results
> in damages.   The cause of action accrues even though the full extent of the injury
> is not then known or predictable."   1 C. Corman, Limitation of Actions § 7.4.1, pp.
> 526-527 (1991) (footnote omitted); see also 54 C.J.S., Limitations of Actions
> § 112, p. 150 (2005).   Were it otherwise, the statute would begin to run only after a
> plaintiff became satisfied that he had been harmed enough, placing the supposed
> statute of repose in the sole hands of the party seeking relief.

*Id.* at 391.   The Court in *Wallace* held that this point is reached with a Fourth Amendment claim at

the point when the plaintiff is arrested, although it noted that normal accrual rule is subject to a

distinctive exception in false arrest cases that postpones accrual until the false imprisonment ends,

that is, when the unlawful detention is made lawful by process of law.   *Id.* at 389.

Consistent with *Wallace*, the Seventh Circuit Court of Appeals has stated that a cause of

action based on a search or seizure that violates the Fourth Amendment accrues at the time of the

---

[2] The Court considers this case "commenced" when it was "filed," *see* Fed. R. Civ. P. 3, and
"filed" the day it was first "delivered" to the Clerk of Court, *see* Fed. R. Civ. P. 5(d)(2) – May 8,
2015.   This is true regardless of deficiencies in the complaint's form, *Farley v. Koepp*, 788 F.3d
681, 685 (7th Cir. 2015), even the lack of a proper signature under Federal Rule of Civil Procedure
11(a).   Thus, even though the Court struck Perkinson's May 8, 2015, complaint for failing to bear
the signature of the attorney who filed it, it was filed that day, and this action commenced that day.

search or seizure.  *See Copus v. City of Edgerton*, 151 F.3d 646, 649 (7th Cir. 1998) (holding Fourth Amendment claim for warrantless search accrued at time of search, not when conviction following the search was invalidated); *see also Foryoh v. Hannah-Porter*, 217 F. App'x 534, 535 (7th Cir. 2007) ("Claims based on . . . unlawful search accrued a few hours earlier the same day, as soon as Foryoh sustained injury from these wrongs.").   This is because ordinarily a plaintiff should know she is subject to a search and seizure – the injury – when it occurs, and she could file suit for her injury at that point.  *Wallace* makes clear that accrual will not be delayed until the plaintiff is satisfied she has been harmed enough.

Perkinson claims she is entitled to the benefit of the discovery rule regarding accrual that exists in federal common law.   The federal common law discovery rule postpones accrual of a cause of action from the date when the plaintiff is injured to the date when she discovers she has been injured.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990).   District courts within the Seventh Circuit are split on whether the discovery rule applies to accrual of § 1983 claims.  *Compare Johnson v. Garza*, 564 F. Supp. 2d 845, 851 (N.D. Ill. 2008) (holding Fourth Amendment claim for search based on warrant procured by deliberately false statements did not accrue at time of search), *with Thomas v. City of Chi.*, No. 07-CV-4969, 2009 WL 1444439, at *2-*3 (N.D. Ill. May 21, 2009) (claim for Fourth Amendment violation accrues at the time of the unlawful arrest, regardless of when plaintiff learns that the officers lacked probable cause to arrest him).   The Court finds the reasoning of *Thomas* to be persuasive:

> The Court agrees with those courts that have held that *Wallace v. Kato* creates a clear rule governing the accrual date of a false arrest claim.   First, the Supreme Court has "pointedly remarked" that the discovery rule has not been deemed applicable to all federal statutes.   *S.E.C. v. Koenig,* 557 F.3d 736, 739 (7th Cir. 2009) (discussing *TRW, Inc. v. Andrews,* 534 U.S. 19, 27, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001)).   Second, there are sound reasons for thinking that the discovery rule does not alter the accrual date of a false arrest claim.   As an initial

13

> matter, *Johnson v. Garza*'s ruling that a false arrest claim did not accrue until the
> plaintiff became aware of the pertinent misconduct is difficult to square with the
> facts of *Wallace v. Kato,* the Supreme Court case which holds that a cause of action
> for false arrest accrues no later than the arraignment.   In *Wallace v. Kato,* the
> plaintiff had been convicted of murder, but the Illinois Appellate Court held on
> direct appeal that the officers had lacked probable cause to make the initial arrest
> that led to Plaintiff's conviction.   549 U.S. at 386 (discussing *People v. Wallace,*
> 299 Ill. App.3d 9, 233 Ill. Dec. 444, 701 N.E. 2d 87, 94 (Ill. App. Ct.1998)).   The
> reasoning of *Johnson v. Garza* would lead to the conclusion that a plaintiff's cause
> of action accrues when the plaintiff learns that the officers lacked probable cause to
> effect the arrest.   See 564 F.Supp.2d at 851.   However, the Supreme Court's
> opinion contained no such refinement.   Rather, the Court held that a plaintiff can
> sue on a false arrest claim the moment that the arrest is made and that the statute of
> limitations begins to run once the Plaintiff is held pursuant to legal process.   *Kato,*
> 549 U.S. at 390 & n. 3.

*Thomas*, 2009 WL 1444439, at *3 (footnote omitted).   The same logic applies to claims for

searches and seizures based on warrants obtained by deception:   the plaintiff can sue on an

unlawful search and seizure claim the moment the search and seizure occur, so the statute of

limitations begins to run at that time.

Even if the discovery rule were to apply, it is unclear how the retention of Perkinson's

property for an unreasonable period of time, the reason she offers for being unaware of the

illegality of the search of her home until later, would have tipped her off to the fact that the warrant

itself was obtained in violation of her Fourth Amendment rights.   In the absence of any logical

argument about why she was unaware of the search or that she could file a suit about it until after

the search, the Court cannot find she is entitled to a benefit from the discovery rule, even if it were

to apply to § 1983 cases.

To the extent Perkinson alleges she is entitled to the benefit of the continuing violation

doctrine to bring her claims within the statute of limitations, it is true that the doctrine will delay

the accrual of the cause of action based on multiple transgressions that are part of the same

unlawful practice until the final act of wrongdoing.   *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (Title VII context).   However, the continuing violation doctrine does not apply to discrete acts, *id.* at 122, and that is all Perkinson has alleged in this case – discrete acts of unlawful search and seizure.   Thus, the continuing violation doctrine will not bring her within the statute of limitations based on conduct that occurred on or before April 29, 2013.

For these reasons, and as an alternative to the *res judicata* reasoning discussed above, the Court dismisses Perkinson's claims in Count 1 to the extent they rely on the April 29, 2013, search and seizure and the warrant authorizing those actions.

4.   Adequacy of Claims Pled

The Court now turns to the adequacy of the remaining claims, or in some cases, alternate bases for dismissal of some claims.   This task is complicated by the imprecision of Perkinson's pleading, which is tolerable to some extent in light of federal notice pleading standards, but not if the defendants are not given notice of the basis of Perkinson's claims.   When it comes to *pro se* plaintiffs, the Court will liberally construe their allegations, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), but when a plaintiff is represented by counsel, the Court expects counsel to organize his pleadings and formulate comprehensible statements of the claims, and the Court will not do his job for him, *see United States v. McClellan*, 165 F.3d 535, 550 (7th Cir. 1999).   To the extent the Court can decipher possible claims pled, it will examine whether they are adequately pled.

a.   Fourth Amendment Claims for Unlawful Search/Seizure:   No allegation suggests Schuster was in any way involved in obtaining the 2013 warrants or in executing them in 2013.   The only allegations relating to Schuster are about his conduct in executing a 2013 warrant in 2015.   Count 1 against Schuster will be dismissed without prejudice

to the extent it rests on wrongful conduct in 2013.

The defendants ask for dismissal of Count 1 against Schuster to the extent it alleges a possible violation of Perkinson's Fourth Amendment rights for execution of the 2013 seizure warrant in 2015 because there are no allegations Schuster knew of the false statements used in originally obtaining the warrant.   While this is true, it should have been obvious to Schuster from the face of the warrant that it was stale because it was two years old.   Thus, Perkinson may have a claim that Schuster violated her Fourth Amendment rights by knowingly executing a facially stale warrant in 2015.

No allegations suggest Beliveau was in any way involved in the execution of the warrant to freeze Perkinson's bank accounts in 2015.   Therefore, Count 1 against Beliveau will be dismissed without prejudice to the extent it rests on wrongful conduct in 2015.

b.   <u>Fourth Amendment Claims for Unlawful Arrest</u>:   Perkinson alleges her arrest violated the Fourth Amendment because it was without probable cause.   She does not, however, allege any facts plausibly suggesting Beliveau or Schuster were related in any way to that allegedly unlawful arrest.   Instead, she vaguely asserts they caused her arrest, but that is not sufficient to meet the even the liberal federal notice pleading standards.   Count 1 will be dismissed without prejudice to the extent it attempts to assert a Fourth Amendment violation for unlawful arrest.

c.   <u>Fifth Amendment Claims</u>:   It is unclear which facts and under what theory Perkinson believes her Fifth Amendment rights were violated by Beliveau or Schuster. Count 1 will be dismissed without prejudice to the extent it alleges a violation of the Fifth Amendment.

d.      Fourteenth Amendment Claims for Deprivation of a Liberty

Interest:   Fourteenth Amendment due process guarantees do not apply unless a protectible

property or liberty interest is implicated.   *Board of Regents of State Colleges v. Roth,* 408 U.S.

564, 570-71 (1972).   Without the loss of such an interest, due process guarantees do not apply.

*Id.*   Time spent in confinement after an arrest can constitute a deprivation of a liberty interest.

*See Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (noting that "the alleged liberty

deprivation came not from the initial arrest, but from the time spent in confinement *after* arrest").

However, a defendant who is released on bond the same day as her arrest suffers no such loss of

liberty.   *Id.*   Furthermore, the burden of appearing in court and participating in the litigation

process does not constitute deprivation of a liberty interest without due process of law; it is in fact

the exact process of law that is due.   *Id.* at 557 n.2.   Perkinson suffered no liberty deprivation; she

was released on bond the same day as her arrest.   Thus, Count 1 against Beliveau and Schuster

will be dismissed with prejudice to the extent it alleges a due process claim for deprivation of a

liberty interest without due process of law.

e.      Fourteenth Amendment Claims for Deprivation of Equal

Protection:   Fourteenth Amendment equal protection guarantees "a right to be free from invidious

discrimination in statutory classifications and other governmental activity."   *Harris v. McRae*,

448 U.S. 297, 322 (1980).   Perkinson has not alleged anywhere in her Amended Complaint that

she was purposefully treated differently from other persons not in her protected group.   *See*

*Washington v. Davis*, 426 U.S. 229, 239-42 (1976).   Thus, Count 1 will be dismissed without

prejudice to the extent it alleges an equal protection claim.

f.      Conspiracy:   To the extent Perkinson attempts to assert in Count 1

17

a federal conspiracy claim, she has alleged no facts plausibly suggesting any improper agreement among the defendants to deprive her of any constitutional right.   Her federal conspiracy claim will be dismissed without prejudice.

Having dismissed all claims in Count 1 except for a Fourth Amendment claim against Schuster in his individual capacity for executing a warrant that was stale on its face, the Court now turns to the state law claims pled in Counts 2 and 3.

B.   <u>Count 2 and 3</u>

The defendants argue Perkinson has failed to state claims for her state law causes of action and that those claims are barred by sovereign immunity and public official immunity.   Again, the Court first addresses whether the defendants can be sued for the causes of action in Counts 2 and 3.

Beliveau and Schuster argue that they are immune from state law causes of action by virtue of state sovereign immunity and state public officials' immunity.[3]

The Illinois State Lawsuit Immunity Act ("Immunity Act") states that, except as provided under the Court of Claims Act and other exceptions that do not apply here, "the State of Illinois shall not be made a defendant or party in any court."   745 ILCS 5/1.   The Court of Claims Act, 705 ILCS 505/1 *et seq.*, in turn, provides that the Court of Claims has exclusive jurisdiction to hear and determine "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit."   705 ILCS 505/8(d). *See, generally, Coleman v. East Joliet Fire Prot. Dist.*, No. 117952, 2016 WL 280515, at *6 (Ill.

---

[3] Curiously, the defendants have not argued that Perkinson's state law claims are barred by the Eleventh Amendment.   Ordinarily, unless the state consents, the Eleventh Amendment bars federal courts from hearing suits against states or against state officials if the state is "'the real, substantial party in interest.'"   *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-102 (1984) (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464 (1945)); *Hans v. Louisiana*, 134 U.S. 1 (1890) (extending immunity to suits brought against a state by one of its own citizens).

Jan. 22, 2016).   Thus, tort suits against the state of Illinois must be pursued in the Illinois Court of

Claims.   *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).   The Immunity Act extends as well to

suits for damages against state employees that are really, for all practical purposes, suits against the

state in that "the real claim is against the State of Illinois itself and when the State of Illinois is the

party vitally interested."   *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990) (internal quotations

omitted).   This is the case where defendants are accused of breaching duties imposed solely by

virtue of their state employment.   *See Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992) (sovereign

immunity did not apply to negligent driving by state employee); *Toth v. England*, 809 N.E.2d 702,

710 (Ill. App. Ct. 2004) (sovereign immunity applied to state social worker for negligent freezing

of patient's assets); *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002) (sovereign immunity

applied to negligence for exposing prisoner to exposed electrical wires in prison shower).

"The common law doctrine of public officials' immunity dictates that public officials are

immune from personal liability for their performance of discretionary duties" that are unique to

their particular public offices.   *Currie*, 592 N.E.2d at 983-84.   It is based on the desire not to

subject public officials to personal liability when they make decisions based on their perceptions

of public needs.   *Id.* at 984.

Perkinson ignores the defendants' arguments and instead argues that the defendants are not

entitled to qualified immunity, an affirmative defense that shields government officials from

liability for civil damages where their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.   *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d

944, 950 (7th Cir. 2000).

19

The Court finds that Beliveau and Schuster are entitled to sovereign immunity for state law causes of action based on their conduct in seeking and executing warrants, maintaining custody of seized property, and in arresting Perkinson.   Duties relating to those functions are imposed on them solely by virtue of their status as state employees, so claims based on breaches of those duties must be pursued, if at all, in the Illinois Court of Claims.   Sovereign immunity further bars any such claims against the ISP either directly or through a *respondeat superior* theory.

Beliveau and Schuster are also entitled to public officials' immunity because seeking and executing warrants, maintaining custody over seized property and arresting individuals are discretionary duties unique to their public offices with the ISP.

For these reasons, the Court dismisses Counts 2 and 3 as to all defendants without prejudice to Perkinson's seeking relief in the Illinois Court of Claims.   In light of this dismissal, the Court need not decide whether Perkinson has adequately pled her state law tort claims.

## IV.    Unknown Defendants

The Court notes that Magistrate Judge Frazier set a deadline of January 31, 2016, for motions to amend the pleadings, but Perkinson has not moved to amend her pleading to identify the unknown defendants.   Nor is there evidence in the record that those defendants have been served with process within 120 days of the filing of the complaint.   Accordingly, the Court will order Perkinson to show cause why the unknown defendants should not be dismissed without prejudice for failure to serve pursuant to Federal Rule of Civil Procedure 4(m).

## V.    Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss (Doc. 38);

- **DISMISSES** the following claims **with prejudice**:

- o Count 1 against Beliveau in his individual capacity, and in his official capacity for injunctive relief, for a Fourth Amendment violation based on his conduct in obtaining the 2013 warrants and in executing the search and seizures of Perkinson's home and bank accounts;

- o Count 1 against Schuster in his individual capacity, and in his official capacity for injunctive relief, for a Fourth Amendment violation based on his conduct in obtaining the 2013 warrants and executing the search and seizure of Perkinson's home in 2013;

- o Count 1 against Beliveau and Schuster in their individual capacities for a Fourteenth Amendment due process violation based on the deprivation of a liberty interest;

- **DISMISSES** the following claims **without prejudice**:

  - o Count 1 against the ISP, Beliveau and Schuster in their official capacities for money damages for a Fourth Amendment violation based on their conduct relating to the search and seizures of Perkinson's home and bank accounts in 2013;

  - o Count 1 against the Schuster in his individual capacity for a Fourth Amendment violation based on his conduct relating to the freezing of Perkinson's bank accounts in 2013

  - o Count 1 against the ISP, Beliveau and Schuster in their official capacities for a Fourth Amendment violation based on their conduct relating to the seizure of Perkinson's bank accounts in 2015;

  - o Count 1 against all defendants for a Fourth Amendment violation based on their conduct relating to Perkinson's arrest;

  - o Count 1 against all defendants for federal conspiracy;

  - o Count 1 against all defendants for a Fifth Amendment violation;

  - o Count 1 against the ISP, Beliveau and Schuster in their official capacities for a Fourteenth Amendment due process violation based on the deprivation of a liberty interest;

  - o Count 1 against all defendants for a Fourteenth Amendment equal protection violation; and

  - o Counts 2 and 3 against all defendants for fraud, conversion, false arrest, false imprisonment and unlawful restraint;

21

- **ORDERS** that Perkinson shall up to and including May 6, 2016, to amend her complaint to attempt to replead the claims that have been dismissed without prejudice *except* (1) the claims under 42 U.S.C. § 1983 against the ISP and against Beliveau and Schuster in their official capacities for monetary damages, (2) the claims against Beliveau in his individual capacity under 42 U.S.C. § 1983 based on the April 29, 2013, search and seizure and the warrant authorizing those actions and (3) the state law claims included in Counts 2 and 3. If Perkinson choses to amend her complaint, the Court encourages her to *refine and clarify* her pleading rather than simply *expand* it so that the Court and the defendants can better understand the nature of and bases for her claims;

- **ORDERS** Perkinson to **SHOW CAUSE** on or before May 6, 2016, why the unknown defendants should not be dismissed without prejudice pursuant to Rule 4(m) for failure to serve; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The only claim remaining at this point against a named defendant is Count 1 against the

Schuster in his individual capacity for a Fourth Amendment violation based on his execution of a

stale warrant to freeze Perkinson's bank accounts in 2015.

**IT IS SO ORDERED.**
**DATED:   April 5, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**